GEHRING & SATRIALE LLC
Joseph E. Gehring, Jr. (JG8178)
370 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 400-7420
(212) 400-7440 (fax)
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MORGAN STANLEY SMITH BARNEY LLC,

                    Plaintiff,

        v.

KEVIN WHITEHEAD,

                    Defendant.

Case No. 10 CIV 2830 (PAC)

ECF Case

## <u>VERIFIED COMPLAINT</u>

Plaintiff Morgan Stanley Smith Barney LLC ("MSSB"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendant Kevin Whitehead ("Whitehead") and alleges as follows:

## I.      INTRODUCTION

1.      This dispute arises from the abrupt purported resignation of Whitehead's employment with MSSB and his violation of New York law consisting of breach of contract and breach of the duty of loyalty and fiduciary duty.  In particular, Whitehead has accepted an offer to join a competitor, Wells Fargo Advisors, LLC ("Wells Fargo"), on March 29, 2010, and has started work at Wells Fargo in violation of the requisite 60-day written notice period (the "Notice Period") specified in the terms of the agreement he electronically accepted and acknowledged on November 18, 2005 (the "Agreement").  Since resigning, Whitehead has wrongfully began working for Wells Fargo in plain violation of his contractual obligations to MSSB.

2.      To prevent irreparable harm arising from this course of wrongdoing, MSSB seeks temporary injunctive relief, inter alia, requiring Whitehead to comply with his agreements with MSSB, including the Notice Period, and barring Whitehead from using MSSB confidential and proprietary business and customer information to solicit MSSB's employees and clients.

## II.      PARTIES

3.      MSSB is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New York.  MSSB is a citizen of Delaware and New York.  MSSB maintains branch offices in St. Louis, Missouri.

4.      Until March 29, 2010, Whitehead worked for MSSB as a Complex Manager in St. Louis, Missouri.  Whitehead resigned from MSSB and joined Wells Fargo, a direct competitor of MSSB, in its offices in Clayton, Missouri.  Upon information and belief, Whitehead resides in and is a citizen of the State of Missouri.

## II.   JURISDICTION AND VENUE

5.      Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332.  The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, against Whitehead.  Venue is proper in this district because the agreement Whitehead signed specifically provides that "[i]n any dispute relating to or concerning this agreement, the parties agree to submit such dispute to a state or federal court in the County of New York and submit to the exclusive jurisdiction of such court . . . ."  See Exhibit **"A"** hereto.

## III. FACTS COMMON TO ALL COUNTS

6.      Whitehead was the Complex Manager for MSSB in the St. Louis area.  Whitehead was also an Executive Director since December 2003.  Prior to his resignation, Whitehead supervised no fewer than 6 branch offices in the St. Louis area with a total of over 100 financial advisors servicing MSSB clients with billions of dollars under management.  In performing his

job, Whitehead was given access on a daily basis to highly sensitive information concerning MSSB's clients.

7.       In addition, as Complex Manager and Executive Director, Whitehead was responsible for business development and for recruiting, hiring, and training brokers in the St. Louis area.  Accordingly, Whitehead was privy to extremely sensitive broker information including without limitation the commissions, production, and revenue generated by each broker in the office, as well as their client base.

8.       On March 29, 2010, Whitehead tendered his resignation to MSSB and immediately began work at a competitor, Wells Fargo.  This was a direct and clear violation of a 60-day "garden-leave" agreement that Whitehead had entered into with MSSB.

9.       In connection with his employment at MSSB and in connection with becoming eligible to receive equity awards, Whitehead agreed to provide MSSB with 60 days notice prior to his termination of employment.  Paragraph A of his Agreement provides that "[y]ou agree that in the event you decide to resign your employment for any reason (a "Resignation"), you will provide advance written notice of your Resignation to your immediate manager, and that the period of notice that you will provide shall be determined by your officer level at the time of your Resignation. . . ."  Because Whitehead was an Executive Director at the time of his resignation, he was required to provide MSSB with 60 days advance notice of his resignation.  See Exhibit **"A"** hereto.

10.      Whitehead's agreement is very clear in that "[d]uring the Notice Period . . ., you will remain an employee of MSSB and will continue to be paid your base salary and be eligible for welfare and qualified retirement plan benefits applicable to you," and that "[a]s an employee during the Notice Period, you will be expected to undertake such duties and responsibilities as are assigned to you by MSSB. . . ."  See Exhibit **"A"** (para. A).

3

11.     In his agreement and in further exchange for very valuable monetary consideration, Whitehead also agreed not to hire or recruit MSSB employees for a six month period after his termination of employment, and he further agreed not to solicit MSSB clients for a period of 90 days after the termination of his employment.   Whitehead further agreed to abide by all confidentiality obligations set forth in MSSB's Code of Conduct.   <u>See</u> Exhibit **"A"** hereto (paras. B, C, D).

12.     Whitehead also agreed in his agreement that "if you do not comply or threaten not to comply with the Terms and Conditions, damages will not be an adequate remedy for any breach committed by you and, therefore, MSSB will be entitled to injunctive relief or specific performance in a state or federal court in the County of New York to the fullest extent permissible by law." <u>See</u> Exhibit **"A"** hereto.

13.     On Monday, March 29, 2010, Whitehead resigned <u>without any advance notice</u> and immediately joined a competing firm, Wells Fargo.  His resignation letter (dated March 28, 2010) states:   "Please be advised that I am resigning my position with MSSB Smith Barney LLC <u>effective immediately</u>.  I have decided to accept a position with Wells Fargo Advisors. . . ." <u>See</u> Exhibit **"B"** hereto (emphasis added).   Whitehead lists the office address in which he will be working and his new telephone number and states that "<u>I can be reached during business hours through my new office</u>. . . ." <u>See</u> Exhibit **"B"** hereto (emphasis added).

14.     On the same day of Whitehead's resignation and after receiving his resignation letter, counsel for MSSB sent to Whitehead by overnight delivery a letter enclosing his agreement and reminding him of his notice obligations and other obligations.   <u>See</u> Exhibit **"C"** hereto (emphasis added).   Whitehead did not respond.   In fact, entirely consistent with Whitehead's resignation letter, Whitehead continues to work at Wells Fargo.   <u>See</u> Accompanying Declaration.

15.     Moreover, on the same day of Whitehead's resignation, Reuters reported on his resignation and noted that "[i]n his new role, Whitehead will oversea 13 branches in Wells Fargo's headquarter St. Louis market."

16.     Moreover, MSSB just today received a call from Wells Fargo asking that MSSB "clear" Whitehead's securities license, further indicating that Whitehead is now working at Wells Fargo.

17.     By failing to provide MSSB with 60 days notice of his resignation, Whitehead violated Paragraph A of his Agreement and is thereby interfering with MSSB in its opportunity to ensure a smooth transition of the offices in which Whitehead formerly managed.

18.     By violating his Notice Provision and by failing to respond to the letter sent to him by MSSB counsel, MSSB also believes that Whitehead has violated or intends to violate his other obligations, including his non-solicitation and confidentiality obligations as set forth in Paragraphs B, C and D of his Agreement.

19.     Unless Whitehead is enjoined from violating the terms of his Agreement, MSSB will be irreparably harmed.

20.     MSSB has no adequate remedy at law.

## COUNT I
## (BREACH OF CONTRACT)

21.     The allegations of Paragraphs 1 through 20 are incorporated herein by reference with the same force and effect as if set forth in full below.

22.     Defendant has breached the provisions of his Agreement with MSSB.

23.     As a consequence of the foregoing, MSSB has suffered and will continue suffer irreparable harm and loss.

## COUNT II
## (BREACH OF THE DUTY OF LOYALTY AND BREACH OF FIDUCIARY DUTY)

24.     The allegations of Paragraphs 1 through 23 are incorporated herein by reference with the same force and effect as if set forth in full below.

25.     Defendant has violated his duty of loyalty and fiduciary duty to MSSB by violating his contractual obligations to MSSB and by engaging in other actions contrary to the interests of MSSB.

26.     As a consequence of the foregoing, MSSB has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in the above-referenced Counts, MSSB respectfully requests:

A Temporary Restraining Order and a Preliminary Injunction Order issue immediately, enjoining Defendant, directly or indirectly, and whether alone or in concert with others, from:

(i)     Violating Defendant's obligation to provide MSSB with 60 days' notice of his resignation from the company;

(ii)    Hiring or soliciting, recruiting, inducing, enticing, influencing or encouraging any MSSB employee with whom Defendant worked or had professional or business contact, to leave the Firm or become hired or engaged by another firm;

(iii)   Soliciting the business of any clients of MSSB;

(iv)    Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of MSSB, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(v)     Retaining, in any form, including without limitation original, copied, handwritten, computerized, or any other form, any Records and Information;

6

(vi)    All other such acts as this Court deems appropriate for injunctive relief.

WHEREFORE, by virtue of the foregoing acts complained of above, MSSB demands judgment in its favor and against Defendant for a TRO and preliminary injunctive relief pending the outcome of arbitration in accordance with Rule 13804 of the Code of Arbitration of the Financial Industry Regulatory Authority.

Dated: March 31, 2010

GEHRING & SATRIALE LLC

By:    /s/

Joseph E. Gehring, Jr. (JG8178)
370 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 400-7420
(212) 400-7440 (fax)

COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 233
Bala Cynwyd, PA 19004
610-667-6800
610-667-6620 (fax)

Attorneys for Plaintiff

## VERIFICATION

I, Mark S. Arbogast, Senior Vice President/Regional Risk Officer for the Plainti

hereby state that the statements made in the foregoing Complaint are true and correct to the

best of my knowledge, information, and belief.    I understand that the statements in the

foregoing Complaint are made subject to the penalties of 28 U.S.C. Section 1746 relating to

unsworn falsification to authorities.

Mark S. Arbogast

Dated:    March 31, 2010

**EXHIBIT A**

## Davis, John (LEGAL)

| | |
|---|---|
| **From:** | Davis, John (LEGAL) |
| **Sent:** | Monday, March 29, 2010 4:45 PM |
| **To:** | Davis, John (LEGAL) |
| **Subject:** | Employee Notice and Non-Solicitation Agreement |

Your Notice and Non-Solicitation Agreement

Name: Whitehead,Kevin J
Employee Id: EP730
Level: Executive Director

Your acceptance of and agreement to the terms and conditions of the Employee Notice and Non-Solicitation Agreement was successfully received on Nov 18 2005 1:55PM EST.

AGREEMENT

Morgan Stanley, including its subsidiaries, affiliates, and related companies (hereinafter "Morgan Stanley" or the "Firm"), believes that there are certain fundamental employment terms and conditions for Managing Directors1 and Executive Directors that are essential to protect the Firm's business interests, client and employee relationships, and confidential information. These terms and conditions serve a number of important goals which, given your position with the Firm, you are uniquely positioned to advance. The goals include (i) promoting the continuity of our workforce, (ii) providing the Firm, as well as the Firm's clients and customers and other employees, with a smooth transition of business, responsibilities, and business relationships in the event you terminate your employment with the Firm, (iii) ensuring that you continue to fulfill your obligations to the Firm during your employment, (iv) protecting Morgan Stanley's confidential business information, trade secrets, customer lists and other proprietary information to which you have had and will in the future have access, and (v) maintaining Morgan Stanley's customer and employee relationships and goodwill worldwide (collectively, the "Business Interests").

As a Managing Director or Executive Director of Morgan Stanley, you may be eligible to receive equity-based awards under the Firm's equity compensation plans (each an "Equity Award"2), in the Firm's sole discretion. Equity Awards are granted to encourage continued employment, to protect the Firm's global Business Interests, and to align the recipient's interests with the interests of the Firm. In furtherance of these goals, and in addition to any eligibility requirements set forth in applicable equity compensation plans, your eligibility for any Equity Award, whether in respect of fiscal year 2005 or granted at any time in the future, is conditioned upon your agreement to the terms and conditions of this Agreement, including those set forth below in paragraphs A-D (the "Terms and Conditions"). Nothing in this Agreement is intended to obligate the Firm to grant you an Equity Award in respect of fiscal year 2005 or at any time in the future, inasmuch as the grant of Equity Awards will continue to be in the Firm's sole discretion.

1References to "Managing Director" include Executive Vice Presidents and Senior Vice Presidents of Discover Financial Services.
2In addition to equity-based awards, if any, granted under the Equity Incentive Compensation Plan (or any successor thereto), Equity Awards shall also include awards, if any, granted to eligible Asset Management employees pursuant to the Investment Management Deferred Compensation Plan (the "IMDCP").

A. Notice Period Prior to Termination

You agree that in the event you decide to resign your employment for any reason (a "Resignation"), you will provide advance written notice of your Resignation to your immediate manager, and that the period of notice that you will provide shall be determined by your officer level at the time of your Resignation (this period of notice, along with the Firm's period of notice described below, the "Notice Period").

If you are an Executive Director at the time of your Resignation, your Notice Period will be 60 days;

If you are a Managing Director at the time of your Resignation, your Notice Period will be 90 days;

If you are a member of the Management Committee at the time of your Resignation, your Notice Period will be 180 days. In the event of the termination of your employment by the Firm for any reason other than for Cause (as defined in the most recent Equity Award granted prior to the date of such termination and/or as provided below), the Firm, in its discretion, will either provide you with (i) notice of your termination equal to the applicable Notice Period or (ii) payment in lieu of such Notice Period (or, where notice has previously been given in accordance with clause (i) above, payment in lieu of the remainder of such Notice Period), subject, in the case of clause (ii), to your execution, delivery and non-revocation of a release in a form satisfactory to the Firm.

During the Notice Period (provided that you are not paid in lieu of your Notice Period in the event of the termination of your employment by the Firm), you will remain an employee of Morgan Stanley and will continue to be paid your base salary and be eligible for welfare and qualified retirement plan benefits applicable to you. However, you will generally not be eligible to receive Above Base Compensation (i.e., a bonus) if you decide to leave the Firm. If you give or receive notice of termination of your employment with the Firm, please consult the Human Resources Department for more information.

As an employee during the Notice Period, you will be expected to undertake such duties and responsibilities as are assigned to you by Morgan Stanley, including duties to assist Morgan Stanley with your transition from the Firm and maintaining the Firm's business, business relationships, and goodwill. In addition, as an employee you will continue to be bound by all fiduciary duties and obligations owed to Morgan Stanley and required to comply with all Firm policies and the Code of Conduct, as amended from time to time (the "Code of Conduct"). The Firm reserves the right to put you on paid leave (i.e., base salary and welfare and qualified retirement plan benefits continuance) and to suspend any of your duties and powers and to relocate your office for all or part of your Notice Period.

Subject to the applicable Notice Period that the Firm has undertaken to provide to the extent required above, this Agreement does not create a contract for employment for any specified duration or in any way limit Morgan Stanley's right to terminate your employment as an at-will employee or otherwise modify the At-Will Employment Policy on the Human Resources Department's policy website. Nor does it alter your right to terminate your employment at will, subject to the applicable Notice Period.


B. Non-Solicitation of Clients and Customers

The relationship between the Firm and its clients and customers, and prospective clients and customers, constitutes a valuable asset of Morgan Stanley and may not be converted to your own use, or for the use of any third party. Accordingly, you agree that during your employment, including during your Notice Period, and during your Client Non-Solicitation Period (as defined in the immediately subsequent sentence), you will not, directly or indirectly (through any person, corporation, partnership or other business entity of any kind), solicit or entice away or in any manner attempt to persuade any client or customer, or prospective client or customer, of Morgan Stanley (i) to discontinue or diminish his, her or its relationship or prospective relationship with the Firm or (ii) to otherwise provide his, her or its business to any person, corporation, partnership or other business entity which engages in any line of business in which Morgan Stanley is engaged (other than Morgan Stanley). The "Client Non-Solicitation Period" means:

If you are an Executive Director or a Managing Director at the time of your Resignation, 90 days after the termination of your employment;

If you are a member of the Management Committee at the time of your Resignation, 180 days after the termination of your employment.
The restrictions in this paragraph shall apply only to clients or customers, or prospective clients or customers, that you worked for on an actual or prospective project or assignment during the Notice Period or the period of 180 days preceding your notice of Resignation.


C. No Hire or Solicitation of Employees

The employees of Morgan Stanley are one of its most important assets, and the Firm wishes to protect its interest in retaining valuable employees. Accordingly, you agree that during your employment, including during your Notice Period, and for 180 days after the termination of your employment, you will not directly or indirectly in any capacity (including through any person, corporation, partnership or other business entity of any kind), hire or solicit, recruit, induce, entice, influence, or encourage any Morgan Stanley employee to leave the Firm or become hired or engaged by another firm. The restrictions in this paragraph shall apply only to employees with whom you worked or had professional or business contact, or who worked in or with your business unit, during the Notice Period or the period of 180 days preceding your notice of

Resignation.

D. Confidentiality Obligations

You acknowledge that you have agreed to abide by the obligations of confidentiality as set forth in the Firm's Code of Conduct, including those obligations that extend beyond your period of employment with Morgan Stanley.

****

Morgan Stanley reserves the right to waive all or part of the Terms and Conditions under appropriate circumstances, in its sole discretion. Any such waiver must be in writing and signed by a Managing or Executive Director in the Human Resources Department.

Please note that this Agreement constitutes a variation to certain of your terms and conditions of employment. All other terms and conditions of your employment will remain in full force and effect. Through your acceptance of this Agreement, as well as in consideration for your continued employment and any promotion that you may receive and the Firm's undertaking to provide you with notice or payment in lieu of your Notice Period if it terminates your employment for any reason other than for Cause and your acceptance of future compensation, including incentive compensation, you acknowledge that the Terms and Conditions, which will be operative worldwide, are reasonable and necessary to protect Morgan Stanley's global Business Interests. You further acknowledge that any breach or threatened breach of any of the Terms and Conditions will cause immeasurable and irreparable damage to Morgan Stanley.

Accordingly, you agree that if you do not comply or threaten not to comply with the Terms and Conditions, damages will not be an adequate remedy for any breach committed by you and, therefore, Morgan Stanley will be entitled to injunctive relief or specific performance in a state or federal court in the County of New York to the fullest extent permissible by law. In addition, failure to comply with the Terms and Conditions will result in immediate cancellation of any vested and unvested portions of any Equity Award that may be granted to you, in the Firm's sole discretion, in respect of fiscal year 2005 or at any time in the future, and Morgan Stanley may seek additional damages.

The Terms and Conditions shall be deemed to be part of the applicable equity compensation plans of the Firm and of the IMDCP and part of the terms and conditions of all Equity Awards, if any, granted to you in respect of fiscal year 2005 or at any time in the future during your employment with Morgan Stanley.

This Agreement shall be governed by the laws of the State of New York without regard to any conflicts or choice of law principles; provided, however, that any Equity Awards, and the terms and conditions of this Agreement applicable to such Equity Awards, shall be governed by New York law or as otherwise provided in the most recent applicable Equity Award granted prior to the occurrence or event giving rise to the application of this provision. In any dispute relating to or concerning this agreement, the parties agree to submit such dispute to a state or federal court in the County of New York and submit to the exclusive jurisdiction of such court except to the extent that you and Morgan Stanley are obligated to arbitrate disputes pursuant to any individual agreement with the Firm and/or the rules and regulations of any applicable regulatory body, in which case such obligation shall not be deemed to preclude Morgan Stanley from seeking injunctive relief as provided in this Agreement.

In the event any provision in this Agreement should be held invalid, illegal or unenforceable by a state or federal court in the County of New York or an appropriate tribunal of competent jurisdiction in any respect, neither party will be required to comply with such provision for so long as the provision is held to be invalid, illegal or unenforceable, but the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired by the illegality, invalidity or unenforceability of such provision. You agree that a state or federal court in the County of New York or an appropriate tribunal of competent jurisdiction may reform any invalid, illegal or unenforceable provisions to the extent necessary to make them valid and enforceable. It is also understood and agreed that the invalidity of a particular provision in a particular jurisdiction shall not, in and of itself, affect the validity of such provision in any other jurisdiction. Morgan Stanley agrees that to the extent any provision hereof is contrary to applicable law, it will not seek to enforce such provision.

The Firm appreciates your continued contributions and your demonstrated commitment to the Firm's Business Interests set forth above.

Employee Acknowledgement

I have read and understand this Agreement. I recognize and agree that it creates binding obligations and sets forth terms and conditions of my continued employment with the Firm.

**EXHIBIT B**

March 28, 2010


Mr. Kevin B. Forman
Managing Director
Morgan Stanley Smith Barney
227 W. Monroe
Suite 3580
Chicago, IL 60606

Dear Kevin,

Please be advised that I am resigning from my position with Morgan Stanley Smith
Barney LLC effective immediately.  I have decided to accept a position with Wells Fargo
Advisors and will be working at the office located at:

8112 Maryland Avenue
Suite 500
Clayton, MO 63105-3760

I can be reached during business hours through my new office at (314) 726-5050.  Please
forward any correspondence to me at my new business address.

Sincerely,

Kevin J. Whitehead

cc:  Jo-Ann Soloy

**EXHIBIT C**

2000 Westchester Avenue
Purchase, NY 10577

Executive Director and Counsel
Legal and Compliance Division

**MorganStanley
SmithBarney**

Direct Dial: (914) 225-5613
Facsimile No.: (914) 225-9519

March 29, 2010

**<u>VIA OVERNIGHT DELIVERY</u>**

Kevin J. Whitehead
19 Ridgetop
St. Louis, MO 63117

      Re:    <u>**Reminder of Notice Period, Confidentiality, Non-Solicitation and
Other Restrictions**</u>

Dear Mr. Whitehead:

I am in-house legal counsel for Morgan Stanley Smith Barney LLC ("MSSB"). I write to
confirm that you have submitted your resignation from MSSB on March 29, 2010
("Notice Date"). Earlier today, you met with Jo-Ann Soloy at MSSB's offices and
provided Ms. Soloy with a copy of your resignation letter, dated March 28, 2010, and
addressed to MSSB Managing Director Kevin Forman who was not in the office. As a
condition to receiving certain compensation and equity-based awards, you agreed to
certain restrictions in the event that you later resigned your employment with the Firm.
The purpose of this letter is to remind you of the Notice Period, Confidentiality, Non-
Solicitation and other restrictions placed upon you, effective on your Notice Date.

**<u>Notice Period</u>**

In your resignation letter, you indicate that you have accepted a position with Wells
Fargo Advisors ("Wells Fargo") and will be working at Wells Fargo's offices on
Maryland Avenue, in Clayton, Missouri.

However, pursuant to your Employee Notice and Non-Solicitation Agreement, which you
electronically accepted and agreed to abide by on November 18, 2005 (the "Agreement"),
your resignation triggers a sixty (60) day notice period ("Notice Period") prior to your
actual termination of employment from MSSB. For your convenience, a copy of the
Agreement is attached hereto. Therefore, the effective date of your resignation is **May
28, 2010** ("Termination Date"). As of your Notice Date, you began a Notice Period that
will extend until your Termination Date. During the Notice Period, you may be asked to
continue working full-time or to assist management on a more limited basis to ensure the

**MorganStanley**
**SmithBarney**

orderly transitioning of management responsibilities.  Unless you are notified otherwise, you are not required to come into the office, but you should keep yourself available at short notice to assist MSSB when required.  During this Notice Period, you will continue to receive your base salary.  During the Notice Period, you remain an employee of MSSB, and therefore you may not perform any services for any other employer unless MSSB agrees in writing or terminates your employment.  In addition, during the Notice Period, MSSB may still have regulatory responsibilities on your behalf.  Please keep us informed should any event occur which would require a regulatory filing.

**Non-Solicitation Restrictions**

During your Notice Period, and for ninety (90) days after the expiration of the Notice Period, you may not directly or indirectly solicit or entice away any customer or prospective customer of MSSB.

In addition, during your Notice Period, and for one-hundred eighty (180) days after the expiration of the Notice Period, you may not directly or indirectly solicit or entice away any MSSB employee with whom you worked or had professional or business contact to terminate his/her employment from MSSB or to become employed by any other firm.

**Fiduciary Duties**

By reason of the nature and seniority of your position, you owe MSSB certain fiduciary duties.  During the Notice Period, these fiduciary duties require you to act at all times in the best interests of MSSB and to do all that you reasonably can to secure MSSB's business objectives.  In addition, you are reminded that as a consequence of these duties and the competitive nature of the industry, you may not give any assistance whatsoever in the planning of, preparation for, or conduct of, the business of any new employer or new personal business venture prior to your Termination Date.

As such, during the Notice Period, you may not take any actions that would benefit Wells Fargo or any other competitor of MSSB.  MSSB will take all steps necessary to protect its interests in the event that you breach your fiduciary duties.

**Confidentiality**

You have during the course of your employment with MSSB come into contact with confidential and proprietary information.  You have an ongoing obligation to safeguard confidential information whether generated internally or acquired from other sources. Examples of confidential information include (without limitation) information about

**MorganStanley
SmithBarney**

MSSB's clients, client relationships, suppliers, investors, issuers, employees; identity of actual or potential clients and/or customers; legal matters, trade secrets, software applications and any other information about any system, information and/or process that gives or could give MSSB an advantage over its competitors. You will not disclose any confidential and proprietary information to the pubic or to any third party.

\*          \*          \*

I have copied Steve Camp, Esq. and Michael Naccarato, Esq. of Wells Fargo's General Counsel's office. It is essential that that Wells Fargo is made aware of all obligations owed by you to MSSB, so that Wells Fargo can take all appropriate steps necessary to ensure strict compliance with your continuing obligations to MSSB.

To the extent that you have any questions regarding your obligations as outlined in this letter, please have your counsel contact me. All other inquires regarding specific matters relating to your employment and separation from MSSB, e.g., benefits, you should contact Rob Hampton in Human Resources at 312 648-3529.

Very truly yours,

John P. Davis

cc:      Steve Camp, Esq. via email (steve.camp@wachoviasec.com)
         Michael Naccarato, Esq. via email (michael.naccarato@wellsfargoadvisors.com)

## Davis, John (LEGAL)

| | |
|---|---|
| **From:** | Davis, John (LEGAL) |
| **Sent:** | Monday, March 29, 2010 4:45 PM |
| **To:** | Davis, John (LEGAL) |
| **Subject:** | Employee Notice and Non-Solicitation Agreement |

Your Notice and Non-Solicitation Agreement

Name: Whitehead,Kevin J
Employee Id: EP730
Level: Executive Director

Your acceptance of and agreement to the terms and conditions of the Employee Notice and Non-Solicitation Agreement was successfully received on Nov 18 2005 1:55PM EST.

AGREEMENT

Morgan Stanley, including its subsidiaries, affiliates, and related companies (hereinafter "Morgan Stanley" or the "Firm"), believes that there are certain fundamental employment terms and conditions for Managing Directors1 and Executive Directors that are essential to protect the Firm's business interests, client and employee relationships, and confidential information. These terms and conditions serve a number of important goals which, given your position with the Firm, you are uniquely positioned to advance. The goals include (i) promoting the continuity of our workforce, (ii) providing the Firm, as well as the Firm's clients and customers and other employees, with a smooth transition of business, responsibilities, and business relationships in the event you terminate your employment with the Firm, (iii) ensuring that you continue to fulfill your obligations to the Firm during your employment, (iv) protecting Morgan Stanley's confidential business information, trade secrets, customer lists and other proprietary information to which you have had and will in the future have access, and (v) maintaining Morgan Stanley's customer and employee relationships and goodwill worldwide (collectively, the "Business Interests").

As a Managing Director or Executive Director of Morgan Stanley, you may be eligible to receive equity-based awards under the Firm's equity compensation plans (each an "Equity Award"2), in the Firm's sole discretion. Equity Awards are granted to encourage continued employment, to protect the Firm's global Business Interests, and to align the recipient's interests with the interests of the Firm. In furtherance of these goals, and in addition to any eligibility requirements set forth in applicable equity compensation plans, your eligibility for any Equity Award, whether in respect of fiscal year 2005 or granted at any time in the future, is conditioned upon your agreement to the terms and conditions of this Agreement, including those set forth below in paragraphs A-D (the "Terms and Conditions"). Nothing in this Agreement is intended to obligate the Firm to grant you an Equity Award in respect of fiscal year 2005 or at any time in the future, inasmuch as the grant of Equity Awards will continue to be in the Firm's sole discretion.

1References to "Managing Director" include Executive Vice Presidents and Senior Vice Presidents of Discover Financial Services.
2In addition to equity-based awards, if any, granted under the Equity Incentive Compensation Plan (or any successor thereto), Equity Awards shall also include awards, if any, granted to eligible Asset Management employees pursuant to the Investment Management Deferred Compensation Plan (the "IMDCP").

A. Notice Period Prior to Termination

You agree that in the event you decide to resign your employment for any reason (a "Resignation"), you will provide advance written notice of your Resignation to your immediate manager, and that the period of notice that you will provide shall be determined by your officer level at the time of your Resignation (this period of notice, along with the Firm's period of notice described below, the "Notice Period").

If you are an Executive Director at the time of your Resignation, your Notice Period will be 60 days;

If you are a Managing Director at the time of your Resignation, your Notice Period will be 90 days;

If you are a member of the Management Committee at the time of your Resignation, your Notice Period will be 180 days. In the event of the termination of your employment by the Firm for any reason other than for Cause (as defined in the most recent Equity Award granted prior to the date of such termination and/or as provided below), the Firm, in its discretion, will either provide you with (i) notice of your termination equal to the applicable Notice Period or (ii) payment in lieu of such Notice Period (or, where notice has previously been given in accordance with clause (i) above, payment in lieu of the remainder of such Notice Period), subject, in the case of clause (ii), to your execution, delivery and non-revocation of a release in a form satisfactory to the Firm.

During the Notice Period (provided that you are not paid in lieu of your Notice Period in the event of the termination of your employment by the Firm), you will remain an employee of Morgan Stanley and will continue to be paid your base salary and be eligible for welfare and qualified retirement plan benefits applicable to you. However, you will generally not be eligible to receive Above Base Compensation (i.e., a bonus) if you decide to leave the Firm. If you give or receive notice of termination of your employment with the Firm, please consult the Human Resources Department for more information.

As an employee during the Notice Period, you will be expected to undertake such duties and responsibilities as are assigned to you by Morgan Stanley, including duties to assist Morgan Stanley with your transition from the Firm and maintaining the Firm's business, business relationships, and goodwill. In addition, as an employee you will continue to be bound by all fiduciary duties and obligations owed to Morgan Stanley and required to comply with all Firm policies and the Code of Conduct, as amended from time to time (the "Code of Conduct"). The Firm reserves the right to put you on paid leave (i.e., base salary and welfare and qualified retirement plan benefits continuance) and to suspend any of your duties and powers and to relocate your office for all or part of your Notice Period.

Subject to the applicable Notice Period that the Firm has undertaken to provide to the extent required above, this Agreement does not create a contract for employment for any specified duration or in any way limit Morgan Stanley's right to terminate your employment as an at-will employee or otherwise modify the At-Will Employment Policy on the Human Resources Department's policy website. Nor does it alter your right to terminate your employment at will, subject to the applicable Notice Period.

B. Non-Solicitation of Clients and Customers

The relationship between the Firm and its clients and customers, and prospective clients and customers, constitutes a valuable asset of Morgan Stanley and may not be converted to your own use, or for the use of any third party. Accordingly, you agree that during your employment, including during your Notice Period, and during your Client Non-Solicitation Period (as defined in the immediately subsequent sentence), you will not, directly or indirectly (through any person, corporation, partnership or other business entity of any kind), solicit or entice away or in any manner attempt to persuade any client or customer, or prospective client or customer, of Morgan Stanley (i) to discontinue or diminish his, her or its relationship or prospective relationship with the Firm or (ii) to otherwise provide his, her or its business to any person, corporation, partnership or other business entity which engages in any line of business in which Morgan Stanley is engaged (other than Morgan Stanley). The "Client Non-Solicitation Period" means:

If you are an Executive Director or a Managing Director at the time of your Resignation, 90 days after the termination of your employment;

If you are a member of the Management Committee at the time of your Resignation, 180 days after the termination of your employment.
The restrictions in this paragraph shall apply only to clients or customers, or prospective clients or customers, that you worked for on an actual or prospective project or assignment during the Notice Period or the period of 180 days preceding your notice of Resignation.

C. No Hire or Solicitation of Employees

The employees of Morgan Stanley are one of its most important assets, and the Firm wishes to protect its interest in retaining valuable employees. Accordingly, you agree that during your employment, including during your Notice Period, and for 180 days after the termination of your employment, you will not directly or indirectly in any capacity (including through any person, corporation, partnership or other business entity of any kind), hire or solicit, recruit, induce, entice, influence, or encourage any Morgan Stanley employee to leave the Firm or become hired or engaged by another firm. The restrictions in this paragraph shall apply only to employees with whom you worked or had professional or business contact, or who worked in or with your business unit, during the Notice Period or the period of 180 days preceding your notice of

Resignation.

## D. Confidentiality Obligations

You acknowledge that you have agreed to abide by the obligations of confidentiality as set forth in the Firm's Code of Conduct, including those obligations that extend beyond your period of employment with Morgan Stanley.

****

Morgan Stanley reserves the right to waive all or part of the Terms and Conditions under appropriate circumstances, in its sole discretion. Any such waiver must be in writing and signed by a Managing or Executive Director in the Human Resources Department.

Please note that this Agreement constitutes a variation to certain of your terms and conditions of employment. All other terms and conditions of your employment will remain in full force and effect. Through your acceptance of this Agreement, as well as in consideration for your continued employment and any promotion that you may receive and the Firm's undertaking to provide you with notice or payment in lieu of your Notice Period if it terminates your employment for any reason other than for Cause and your acceptance of future compensation, including incentive compensation, you acknowledge that the Terms and Conditions, which will be operative worldwide, are reasonable and necessary to protect Morgan Stanley's global Business Interests. You further acknowledge that any breach or threatened breach of any of the Terms and Conditions will cause immeasurable and irreparable damage to Morgan Stanley.

Accordingly, you agree that if you do not comply or threaten not to comply with the Terms and Conditions, damages will not be an adequate remedy for any breach committed by you and, therefore, Morgan Stanley will be entitled to injunctive relief or specific performance in a state or federal court in the County of New York to the fullest extent permissible by law. In addition, failure to comply with the Terms and Conditions will result in immediate cancellation of any vested and unvested portions of any Equity Award that may be granted to you, in the Firm's sole discretion, in respect of fiscal year 2005 or at any time in the future, and Morgan Stanley may seek additional damages.

The Terms and Conditions shall be deemed to be part of the applicable equity compensation plans of the Firm and of the IMDCP and part of the terms and conditions of all Equity Awards, if any, granted to you in respect of fiscal year 2005 or at any time in the future during your employment with Morgan Stanley.

This Agreement shall be governed by the laws of the State of New York without regard to any conflicts or choice of law principles; provided, however, that any Equity Awards, and the terms and conditions of this Agreement applicable to such Equity Awards, shall be governed by New York law or as otherwise provided in the most recent applicable Equity Award granted prior to the occurrence or event giving rise to the application of this provision. In any dispute relating to or concerning this agreement, the parties agree to submit such dispute to a state or federal court in the County of New York and submit to the exclusive jurisdiction of such court except to the extent that you and Morgan Stanley are obligated to arbitrate disputes pursuant to any individual agreement with the Firm and/or the rules and regulations of any applicable regulatory body, in which case such obligation shall not be deemed to preclude Morgan Stanley from seeking injunctive relief as provided in this Agreement.

In the event any provision in this Agreement should be held invalid, illegal or unenforceable by a state or federal court in the County of New York or an appropriate tribunal of competent jurisdiction in any respect, neither party will be required to comply with such provision for so long as the provision is held to be invalid, illegal or unenforceable, but the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired by the illegality, invalidity or unenforceability of such provision. You agree that a state or federal court in the County of New York or an appropriate tribunal of competent jurisdiction may reform any invalid, illegal or unenforceable provisions to the extent necessary to make them valid and enforceable. It is also understood and agreed that the invalidity of a particular provision in a particular jurisdiction shall not, in and of itself, affect the validity of such provision in any other jurisdiction. Morgan Stanley agrees that to the extent any provision hereof is contrary to applicable law, it will not seek to enforce such provision.

The Firm appreciates your continued contributions and your demonstrated commitment to the Firm's Business Interests set forth above.

Employee Acknowledgement

I have read and understand this Agreement. I recognize and agree that it creates binding obligations and sets forth terms and conditions of my continued employment with the Firm.